## WILLIAM V. SESSIONS *vs.* SAMUEL MOSELEY.

A chose in action, as the promissory note of a third person, or a security for money, may be the subject of a gift *mortis causa*.

Where one, in apprehension of death, delivers a thing to another, to be given by him to a third, after the death of the donor, and, on such donor's death, the thing is delivered accordingly to the donee designated, and accepted by him, this is a valid gift *mortis causa* · But where one, not in apprehension of death,

delivers a thing to another, to be given to a third, when the depositary shall see him, whether the donor live or die, the authority of the depositary to deliver the thing will be revoked by the death of the donor, unless it be previously delivered to the donee and accepted by him.

THIS was an action brought by Danford Work, in the name of the plaintiff, as the administrator of Festus Work, to recover the amount due on a promissory note for $955, made by the defendant payable to Festus Work or order.

At the trial, which was before *Metcalf*, J., in this court, it was contended on the part of the plaintiff, that the note in question was given to Danford Work in the manner described by Lurancy Work in her deposition. She testified in substance as follows : —

" I am the sister of Festus Work. He died September 18th, 1846, at John Work's house in Wilbraham. John's house was his home, and he had generally boarded there; it was the place where his father lived. Festus had been unwell for a number of years before his death, and not able to do much business; he had worked considerable at times during that time; he did all his own business; before he was sick, he worked hard; he was an economical and prudent man. On or about the 20th day of July, 1846, Festus came to John's house in the afternoon, and staid a few hours. He took out his pocket book, and said he was going to give his notes away. He took some notes out of his pocket book, and gave them to me; one of these was a note against Samuel Moseley of $955, to be delivered to my brother Danford Work the first time I saw him. He gave me a note against Reuben Lazell for $154, one against Edward Bliss for $125, two against Walter Hitchcock, one for $84, and one for $20, and one against John Lincoln for $70. He told me to take the notes against Hitchcock and Lincoln, and five dollars in money which he gave me, and to pay his debts and expenses, and if there was any thing left to give it to Danford. He told me to give the notes against Bliss and Lazell to my sister Mrs. Sikes for her youngest boy Festus Eugene Sikes. I do not know of his having any other notes. He then gave me the pocket book, and I put the notes in it and kept them. He told me to

give the pocket book to Danford. I put the pocket book away, and had it till I saw Danford. Festus never had the pocket book again. There were some other papers in the pocket book, a receipt or two and a tax bill. I did not consider the papers of any consequence. At the time he gave me the notes, I asked him if he was more unwell than usual. He replied that he should not live long, and desired to have me take the notes and give them to the persons named. He told me to give the notes to Mrs. Sikes the first time I saw her. I did not know before this time that he was more unwell than usual. About the middle of August he called in at John's house with a new pair of shoes, and staid over three hours. On or about the 20th day of August, 1846, he was brought to the house of John Work, and was then very sick and beyond recovery. He had watchers every night. At the time he was brought home, he said that he did not expect to get well, and spoke of his flesh wasting away on his hands. There was hardly a day after his being brought home but he said he should live but a short time. About the end of August, Mrs. Sikes came to see him, and I gave her the notes against Bliss and Lazell in his presence. He told her to see that she kept the notes for her son. I don't remember that he said any thing more, then, or at any other time during his sickness, about these or any other notes. He did not sit up any of consequence after he was brought home, but did some for a few minutes at a time. I paid his funeral charges and doctor's bill and the expenses of his sickness, not more than $30 in all; and a debt of $30 or $35 to Hitchcock. I wrote to Danford when my brother Festus died; he did not come to the funeral; I had an answer in a few days. I wrote to him in a few days again. I wrote to him often. I first saw Danford in July, 1847, and then gave him the note against Moseley."

The note in question was not delivered to Danford and accepted by him until July, 1847. Letters of administration were granted to the plaintiff on the 6th day of April, 1847, and on the 17th of April he demanded the note of Lurancy Work, it being then in her hands. The administrator, who

8 *

had discharged the note, and who carried on the defence to this suit, contended that the note was his property, and filed a motion for the dismissal of this suit.   The defendant also insisted, that if the evidence tended to show a gift by the intestate, it was a gift *inter vivos*, and was not valid unless accepted by Danford Work in the lifetime of the intestate, and that the acceptance in July, 1847, after the appointment of the plaintiff as administrator, was not sufficient to make a valid and legal gift.

But the court instructed the jury, that if they believed that Festus Work, being sick and apprehensive that he should not recover, gave into the hands of Lurancy Work the note in suit, with instructions to give it after his death to Danford Work, and if Lurancy kept the note in her hands until after the death of Festus, and gave it to Danford after Festus's death, and Danford accepted it, the plaintiff was entitled to recover ; and that the burden of proof was on the plaintiff to satisfy them that such a gift was made and accepted ; or, if they believed that Festus gave the note in suit to Lurancy without any apprehension of death, directing her to give it to Danford when she should see him, and meant to make a gift of it to Danford whether he (Festus) should live or die, and Lurancy gave the note to Danford, and he accepted it, that then the plaintiff was entitled to recover, although the acceptance was not till July, 1847.

The jury found a verdict for the plaintiff, and the defendant alleged exceptions.

*L. Norton*, for the defendant.

The gift should have been made during the donor's last sickness, or in apprehension of death.   2 Bl. Com. 514 ; *Tate* v. *Hilbert*, 2 Ves. Jr. 111, 119 ; 8 Com. Dig. *Donatio Mortis Causa*, 527 ; *Blount* v. *Burrow*, 1 Ves. Jr. 546 ; *Raymond* v. *Sellick*, 10 Conn. 480 ; *Grover* v. *Grover*, 24 Pick. 261.   And it should have been accepted by the donee.   1 Bouv. Law Dict. 343 ; 2 Kent, 438 ; 4 Dane, Ab. 123 ; *Noble* v. *Smith*, 2 Johns. 52 ; *Pearson* v. *Pearson*, 7 Johns. 25 ; *Granziar* v. *Arden*, 10 Johns. 293 ; *Bowers* v. *Heard*, 10 Mass. 427 ; *Parish* v *Stone*, 14 Pick. 198 ; *Bryson* v. *Brownrigg*, 9 Ves. 1 ; *Ward* v

*Turner*, 2 Ves. Sen. 431, 444; Chit. Cont. 14. Placing the note in the hands of a third person is not enough. The direction to Lurancy to make the delivery, when she should see the intended donee, was a power which was revoked by the death of Festus.

*H. Morris*, for the plaintiff.

Delivery to a third person is sufficient. *Drury* v. *Smith*, 1 P. Wms. 404; *Borneman* v. *Sidlinger*, 6 Shep. 225; *Wells* v. *Tucker*, 3 Binn. 366; *Wheelwright* v. *Wheelwright*, 2 Mass. 447; *Hatch* v. *Hatch*, 9 Mass. 307; *Hedge* v. *Drew*, 12 Pick. 141; *Foster* v. *Mansfield*, 3 Met. 412; *Richardson* v. *Lincoln*, 5 Met. 201. The gift being beneficial, an acceptance will be presumed. *Stebbins* v. *Lathrop*, 4 Pick. 33.

SHAW, C. J. This action is brought in the name of the administrator of Festus Work, upon a promissory note made by the defendant, payable to the intestate. The suit is brought by Danford Work, a brother of the intestate, and the only question is, whether Danford is entitled to recover the amount, and hold it to his own use, upon the ground of a gift from the intestate to him. This note was placed, with others, in the hands of a sister of the intestate, by him, during his last sickness, with directions to her to deliver the notes as set forth in her deposition.

The question is, whether, under the circumstances, the transaction, as stated by the sister, constituted a valid gift of Moseley's note by the intestate, either as a gift *inter vivos*, or as a good *donatio causa mortis*. The inquiry before us relates to the correctness of the instructions given by the court to the jury. The judge instructed the jury, that if Festus Work, being sick and apprehensive of death, gave into the hands of Lurancy the note in suit, with directions to give it, after his death, to Danford Work for his own, and she kept the note till after the death of Festus, and then gave it to Danford, and he accepted it, the plaintiff was entitled to recover.

This, we think, was correct. Here are all the requisites for a good *donatio mortis causa*. A note of hand of a third person, a security for money, or a chose in action, however it may have been formerly considered, is now held to be a

Sessions *v.* Moseley.

proper subject of such a gift. There was an actual delivery to a person for the use of the donee; an expectation of death; the death of the donor ensuing; a subsequent delivery to the donee; and an acceptance of the gift by him. *Parish* v. *Stone*, 14 Pick. 198.

The court further instructed the jury, that if they believed that Festus gave the note to Lurancy without any apprehension of death, directing her to give it to Danford, when she should see him, and meant to make a gift of it to Danford, whether he should live or die, and Lurancy gave the note to Danford, and he accepted it, then the plaintiff was entitled to recover.

The court are of opinion, that this instruction cannot be supported. It regards the transaction as a gift *inter vivos*, though not assented to by the donee, or even known to him and not delivered to him till after the donor's death.

The difference between a gift *inter vivos* and a gift *causa mortis* is this : the former is absolute, irrevocable, and complete, whether the donor die or not; the subject of it must therefore be delivered to the donee or to some other person, with his consent, for his use, and must be accepted by him. *Grover* v. *Grover*, 24 Pick. 261. If, therefore, it be delivered to a third person, with authority to deliver it to the donee, this depositary, until the authority is executed by an actual delivery to and acceptance by the donee, is the agent of the donor, who may revoke the authority and take back the gift; and, therefore, if the delivery do not take place in the donor's lifetime, the authority is revoked by his death; the property does not pass, but remains in the donor, and goes to his executor or administrator. But if intended as a gift *causa mortis*, it could not become absolute and irrevocable till the death of the donor; and, therefore, if delivered to and accepted by the donee, after the decease of the donor, it is sufficient; although it must be remembered, that even as a good and valid *donatio causa mortis*, no such gift can avail against creditors. *Tate* v. *Hilbert*, 2 Ves. Jr. 111.

As the jury may have given their verdict under the second instruction, we think the verdict must be set aside, and a new trial granted.